UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  20-CV-24128-KMW

MSP RECOVERY CLAIMS, SERIES LLC,
MSPA CLAIMS 1, LLC, and MAO-MSO
RECOVERY II, LLC, SERIES PMPI, a
segregated series of MAO-MSO II LLC,

      Plaintiffs,

vs.

INFINITY AUTO INSURANCE COMPANY,
RESPONSE WORLDWIDE INSURANCE
COMPANY, WARNER INSURANCE
COMPANY, INFINITY INSURANCE
COMPANY, ALPHA PROPERTY &
CASUALTY INSURANCE CO, INFINITY
SELECT INSURANCE COMPANY,
INFINITY INDEMNITY INSURANCE
COMPANY, RESPONSE INSURANCE
COMPANY, UNITRIN DIRECT PROPERTY
& CASUALTY CO, and UNITRIN AUTO
AND HOME INSURANCE COMPANY.

      Defendants.

_____/

**<u>DEFENDANTS' MOTION TO DISMISS CLASS ACTION COMPLAINT</u>**

Plaintiffs are a group of collection agencies formed specifically to bring this type of lawsuit.  Plaintiffs assert they are assignees of claims that originally belonged to Medicare Advantage Organizations and other related entities, and that Defendants are liable for allegedly failing to make necessary primary payments to Plaintiffs' assignors.  Plaintiffs' claims fail.  First of all, Plaintiffs have inadequately pled a basis for imposing liability on Defendants.  In order to state a claim under the Medicare Secondary Payer Act, Plaintiffs are required to plead and prove that Defendants are responsible for the medical expenses Plaintiffs claim Defendants should have paid, which Plaintiffs have not done.  In all events, Plaintiffs' class action claims fail as a matter of law because their claims present numerous predominating individualized issues which makes class treatment legally inappropriate here, and this problem is only exacerbated by Plaintiffs' ill-fated attempt to turn this into a nationwide class action.  Finally, jurisdiction does not exist over four of the Defendants, none of which write insurance in Florida.

## ARGUMENT

### I.   THE COMPLAINT SHOULD BE DISMISSED BASED ON LACK OF SUFFICIENT ALLEGATIONS DEMONSTRATING DEFENDANTS' RESPONSIBILITY TO PAY.

Plaintiffs' two causes of action are based on the MSP Act and its implementing regulations.  Both counts therefore require pleading of a legitimate basis for Defendants' payment responsibility.  The MSP Act provides a "primary plan, and an entity that receives payment from a primary plan, shall reimburse the appropriate Trust Fund for any payment made by the Secretary under this subchapter with respect to an item or service *if it is demonstrated that such primary plan has or had a responsibility to make payment* with respect to such item or service."  42 U.S.C. § 1395y(2)(B)(ii) (emphasis added).  The duty to reimburse, then, arises only if it is demonstrated that the primary plan had responsibility to make payment.  Indeed, the Eleventh Circuit specifically so held in *MSP Recovery v. Allstate Insurance Co.*, 835 F.3d 1351,

1361 (11th Cir. 2016), stating "a contractual obligation may serve as sufficient demonstration of responsibility for payment to satisfy the condition precedent to suit under the MSP Act.  This does not relieve Plaintiffs of their burden to allege in their complaints, and then subsequently prove with evidence, that Defendants' valid insurance contracts actually render Defendants responsible for primary payment of the expenses Plaintiffs seek to recover.  And Defendants may still assert any valid contract defense in arguing against their liability.  We hold only that a contractual obligation may satisfy the demonstrated responsibility requirement, not that the existence of a contractual obligation conclusively demonstrates liability under the MSP Act's private cause of action."  *See also MSPA Claims 1, LLC v. Kingsway Amigo Ins. Co.*, 950 F.3d 764, 771 (11th Cir. 2020) ("Until responsibility is 'demonstrated,' therefore, the 'obligation to reimburse Medicare does not exist' and it can't be said that the primary plan—as required by the private cause of action's language—'"failed" to provide appropriate reimbursement.' . . . Thus, § 1395y(b)(2)(B)(ii)'s demonstrated-responsibility requirement is a prerequisite to filing a private lawsuit under § 1395y(b)(3)(A)."); *Ocean Harbor Cas. Ins. v. MSPA Claims, 1*, 261 So. 3d 637, 645 (Fla. 3d DCA 2018), *pet. for review denied* (Fla. S. Ct. Oct. 31, 2019) (same principle); *IDS Prop. Cas. Ins. Co. v. MSPA Claims 1, LLC,* 263 So. 3d 122, 124 (Fla. 3d DCA App. 2018) (same principle).

Here, Plaintiffs' Complaint is devoid of any non-conclusory allegations demonstrating Defendants' responsibility to pay anything.  The Complaint does not include any facts whatsoever related to any enrollee, the amount charged to Plaintiffs' alleged assignors or amounts they supposedly paid, what exactly any such payments were for, what treatment was provided, what exactly was supposedly covered and not paid by Defendants, or what coverage determinations were made by Defendants.  Plaintiffs have simply attached as Exhibit A to their

Complaint a list of what purports to be claims that Defendants reported to CMS/Medicare. Compl. Exhibit A & ¶¶ 59-60.  But just because Defendants reported a claim to CMS does not demonstrate Defendants' responsibility to pay for any particular medical expense.  So, Plaintiffs' Exhibit A, which is nothing more than a bare list of names, demonstrates nothing.

As the above authorities show, to obtain reimbursement under the MSP Act Plaintiffs would have to plead and ultimately show Defendants were in fact required to pay the medical charges at issue, and that these charges were covered in the first instance under the applicable insurance policies issued by Defendants.  Yet, there are many reasons Defendants may have no responsibility to pay, most notably because the subject charges were not reasonable, necessary or related to the relevant automobile accident.  *See, e.g., United Automobile Insurance Co. v. Millennium Diagnostic Imaging Center, Inc.,* 12 So. 3d 242, 245-46 (Fla. 3d DCA 2009).  And, as the above decisions show, it is not enough to merely parrot the words "reasonable, necessary and related."  Unless and until Plaintiffs allege facts, not bald conclusions, showing Defendants actually had an obligation to pay the particular disputed bills, which they simply have not done, Plaintiffs cannot assert a valid claim.

Similarly, with respect to Plaintiffs' claims related to liability insurance the mere fact that a settlement was reached does not necessarily demonstrate Defendants' responsibility to pay for any and all medical expenses.  As one court explained in this context, in "the event that the government does elect to seek reimbursement, it is incumbent upon the government to show how much money it is entitled to from a settlement fund."  *Mackrides v. Marshalls*, No. 11-CV-6540, 2013 WL 1755216, *5 (E.D. Pa. Apr. 24, 2013) (citations omitted).

In connection with settlements, the responsibility of a liability insurer to reimburse Medicare is defined by the scope of the settlement and the Medicare beneficiary's claim against

the third party with whom the settlement is reached.[1]  For example, in *Weinstein v. Sebelius,* No. CIV. A. 12-154, 2013 WL 1187052, *1 (E.D. Pa. Feb. 13, 2013), *report and recommendation adopted*, No. CIV. 12-154, 2013 WL 1187048 (E.D. Pa. Mar. 22, 2013), Weinstein settled a medical malpractice claim with a medical center, AEMC, to resolve a suit arising from the alleged wrongful death of her husband based on stroke-related complications.   The court explained "*Medicare has met its burden of establishing its right to reimbursement in this case by pointing to Ms. Weinstein's release and complaint against AEMC.*" *Id.* (emphasis added).  *See also Salveson v. Sebelius*, No. CIV. 10-4045, 2012 WL 1665424, *7-8 (D.S.D. May 11, 2012) (disagreeing with Salveson's contention that the settlement could not have covered medical expenses relating to the first "non-negligent" surgery, finding Salveson's complaint against the doctors -- not the evidence produced in the case -- defined the scope of Medicare's right to reimbursement because she expressly released those claims in the parties' settlement, and that "both the state and federal lawsuits are specifically incorporated into the Release . . . as defining the scope of the claims discharged.").   As these authorities demonstrate, the mere fact that a settlement was reached does not adequately plead a defendant's responsibility to pay.

Here, the Complaint merely refers to "settlements" with unnamed Medicare beneficiaries, and alleges no legally significant facts regarding any actual settlement.   Plaintiffs' generic allegations do not address any of the following, which are necessary to properly state a claim: (1) What was claimed and released as part of the settlements; (2) Were any and all claims related to the beneficiaries' purported accidents asserted and released; (3) Did the settlements include items for which an MAO made no conditional payment or which were unrelated to the accidents at issue; or (4) Whether the settlements at issue arose from a court order on the merits of a case

---

[1] *See, e.g., Hadden v. United States*, 661 F.3d 298, 302 (6th Cir. 2011); *Taransky v. Sec'y of U.S. Dep't of Health & Human Servs.,* 760 F.3d 307, 315 (3d Cir. 2014).

which may have allocated portions of the settlement to non-medical losses, in which event there could be no MSP Act recovery.[2]

*MSP Recovery Claims, Series LLC v. Ace Am. Ins. Co., 974 F.3d 1305, 1309 (11th Cir. 2020), reh'g denied*, is not to the contrary. Most importantly, *Ace* did not purport to change or overrule the Eleventh Circuit's prior holding in *MSP Recovery*, requiring claimants to plead and prove demonstrated responsibility. Accordingly, *Ace* did not change the rule that a plaintiff needs to plead facts, not just naked conclusions, which is all that exists here in the form of Plaintiffs' Exhibit A, that Defendants actually have an obligation to pay the bills in question. Indeed, *Ace* said nothing about first-party coverage allegations. And as to third-party liability settlement allegations, while the *Ace* Court stated that "Defendants' settlement agreements with beneficiaries show, at minimum, that Defendants had constructive knowledge that they owed the primary payments," *id.* at 1319 (citing *United States v. Baxter Int'l, Inc*., 345 F.3d 866, 903 (11th Cir. 2003), this was pure dicta. Indeed, *Baxter*, on which the *Ace* Court relied, dealt with constructive knowledge in an entirely different context - i.e., whether a tortfeasor can defeat a subrogation claim by the government by paying a third party when it knew or should have known of the government's subrogation rights. *Baxter,* 345 F.3d at 902. That is obviously not the situation here. Moreover, in its amicus brief in *Ace,* the government argued, quoting *Baxter,* that "[c]onstructive knowledge is established when a defendant 'has in its possession information necessary to draw the conclusion that Medicare has made such a payment' or 'willfully blinds itself' to such information." *Ace,* Amicus Brief of United States, filed June 8, 2020, p. 18 n. 4 (copy attached as Exhibit A). So, the government's own view is that a settlement with a Medicare beneficiary alone is insufficient -- rather, the defendant must actually know of a

---

[2] *See, e.g., Bradley v. Sebelius,* 621 F.3d 1330, 1335-38 (11th Cir. 2010); *In the Case of Estate of M.S.W.*, Docket Number: M-10-1528, 2010 WL 7209446, *2 (H.H.S. Nov. 8, 2010).

conditional Medicare payment in order to establish constructive knowledge.  Just as the existence

of a settlement alone is not enough to adequately plead or establish constructive knowledge, it is

also insufficient to validly plead demonstrated responsibility by an insurer.

Plaintiffs obviously realize *Ace* did not eliminate the need to plead facts showing

demonstrated responsibility, because they expressly, but unsuccessfully, attempt to plead around

the issue.  First, Plaintiffs erroneously allege that once an MAO makes a payment for medical

items and services on behalf of its enrollees, the payment is conclusive proof that the items and

services were reasonable and necessary (which therefore supposedly demonstrates that

Defendants would be obligated to pay for such items and services).  (Compl., ¶ 66.)  However,

this legal conclusion is directly contrary to the controlling Eleventh Circuit law, set forth in *MSP*

*Recovery,* holding that MSP Act plaintiffs must plead and prove that defendants' insurance

contracts actually render them responsible for primary payment of the subject expenses.  If

evidence of a conditional payment by a purported secondary payer, which Plaintiffs have not

pled in any event, were "conclusive proof" that a defendant insurer was responsible for paying

the items and services at issue, the Eleventh Circuit could not have held, as it did in *MSP*

*Recovery,* that plaintiffs asserting primary payer responsibility must still plead and prove that the

defendants' insurance contracts in fact provided coverage for the subject expenses.  In addition,

Plaintiffs' "conclusive proof" allegation is refuted by federal Court of Appeals and district court

decisions holding that even if Medicare has made a payment, a primary insurer is not required to

pay beyond what its policy or state law requires (*e.g.,* for unrelated, unreasonable or unnecessary

medical expenses).  *See Caldera v. Ins. Co. of the State of Pa.,* 716 F.3d 861, 864-66 (5th Cir.

2013); *California Ins. Guarantee Ass'n v. Burwell,* 227 F. Supp. 3d 1101, 1113-14 (C.D. Cal.

2017); *California Ins. Guarantee Ass'n v. Price,* 252 F. Supp. 3d 948, 956-57 (C.D. Cal. 2017).

Indeed, citing *Caldera,* the *Ocean* court flatly rejected the argument that an MAO is entitled to "automatic" reimbursement under the MSP Act.  Rather, *Ocean* expressly held the MAO must plead facts demonstrating, and then establish with proof, that it is entitled to recover no-fault benefits under the relevant state law.  *Ocean*, 261 So. 3d at 645-46.

In another attempt to get around their burden to plead and prove Defendants' responsibility to pay, Plaintiffs have argued Defendants failed to administratively appeal the MAOs' rights to reimbursement and therefore are time-barred from challenging the propriety of the amounts paid.  (Compl., ¶ 94.)  Again, this legal conclusion is unfounded.  Nothing in the relevant statute or regulations supports Plaintiffs' position.  To the contrary, Medicare enacted a regulation allowing for appeals by certain applicable plans, including no-fault and liability insurers, in connection with reimbursement demands by Medicare where Medicare pays secondary to those plans, *but specifically declined to extend that appeal process to MAO reimbursement claims.  See* Medicare Program; Right of Appeal for Medicare Secondary Payer Determinations Relating to Liability Insurance (Including Self-Insurance), No-Fault Insurance, and Workers' Compensation Laws and Plans, 80 Fed. Reg. 10611, 10616 (Feb. 27, 2015).  And the *Ocean* court also specifically rejected this plaintiff group's "administrative appeals" argument.  *Ocean,* 261 So. 3d at 647 ("[W]e see nothing in these regulations whereby a primary plan like Ocean Harbor could administratively contest a determination by MSPA that Ocean Harbor was responsible to make a particular payment.  The cases cited by MSPA in support of its argument are inapposite.  They concern the requirement that a Medicare enrollee exhaust administrative remedies before suing Medicare in federal court.  None of those cases stand for the proposition that a primary plan had to exhaust administrative remedies before defending a claim that it was the responsible primary plan for a medical bill.") (footnote omitted).

In short, the Eleventh Circuit unambiguously requires an MSP Act plaintiff to plead facts showing that the insurer is required to make the primary payments in question.  Here, all Plaintiffs have pled is the existence of a group of Medicare-eligible insureds of Defendants, with absolutely no facts showing why Defendants owe primary payments in connection with those individuals.  On that defective pleading basis alone, this case should be dismissed.

## II.   PLAINTIFFS' CLASS ALLEGATIONS FAIL AS A MATTER OF LAW.

For the foregoing reasons, Plaintiffs' entire Complaint should be dismissed.  But, in the alternative, Plaintiffs' class action allegations should be dismissed because, as a matter of law, there can be no predominating common questions of law or fact here, so Plaintiffs cannot certify a class.  Notably, the Florida Court of Appeal reversed class certification in the substantively identical *Ocean* case (adopted by the *IDS* court), rejecting, as a matter of law, the notion that this type of case can be brought as a class action.

In so holding, as noted *Ocean* specifically rejected the theories Plaintiffs assert here to try to avoid the individualized liability inquiries that will necessarily predominate -- that a plaintiff seeking to recover under the Medicare Secondary Payer laws is entitled to "automatic" reimbursement, and that a defendant insurer waives the right to challenge a plaintiff's reimbursement rights if it does not exhaust administrative appeals.  *Ocean*, 261 So. 3d at 645-46.  Rather, and as demonstrated above, a plaintiff in these types of cases must allege in its complaint, and subsequently prove with evidence, that its insurance contract in fact renders the insurer responsible for primary payment of the expenses a plaintiff seeks to recover, and defendants may assert any and all payment defenses they have.  *Id.*  As a result, class treatment is not viable as a matter of law here because of all the predominating individualized issues that will need to be dealt with in order for Plaintiffs to demonstrate Defendants' responsibility with respect to each and every disputed medical transaction.  *See also MSP Recovery Claims, Series*

*LLC v. Plymouth Rock Assurance Corp.*, No. 1:18-CV-11702-ADB, 2019 WL 6791962, at *5 (D. Mass. Dec. 12, 2019) (in denying the plaintiffs' motion to reconsider the court's order dismissing class allegations in another case by this plaintiff group, the court stated it "was not the practicality of identifying settlements that led the Court to determine that common questions of law or fact would not predominate," because there would still have to be an individualized review of each claim to determine whether the defendant insurer had any responsibility to pay anything).

Courts can and should dismiss legally deficient class action allegations at the pleadings stage. *See, e.g., Saunders v. BellSouth Advert. & Pub. Corp.,* No. 98-1885-CIV, 1998 WL 1051961, *1 (S.D. Fla. Nov. 10, 1998) (granting motion to dismiss class action allegations, and rejecting argument that doing so was procedurally improper); *Vandenbrink v. State Farm Mut. Auto. Ins. Co.,* No. 8:12-CV-897-T-30TBM, 2012 WL 3156596, *3 (M.D. Fla. Aug. 3, 2012) (same). *See also Hill v. Wells Fargo Bank, N.A.,* 946 F. Supp. 2d 817, 829 (N.D. Ill. 2013) (same); *Bearden v. Honeywell Int'l, Inc*., No. 3:09-01035, 2010 WL 1223936, *9 & n. 13 (M.D. Tenn. Mar. 24, 2010) (same). To survive this type of motion to dismiss, a plaintiff must plead facts sufficient to demonstrate that all the prerequisites of Fed. R. Civ. P. 23(a) and (b) are met. Courts routinely dismiss class action allegations where, as here, a complaint fails to plead the minimum facts necessary to satisfy these class action prerequisites. *See, e.g., Saunders,* 1998 WL 1051961, *2; *Vandenbrink*, 2012 WL 3156596, *3; *Alaska Airlines, Inc. v. Carey*, No. 07-5711, 2008 WL 2725796, *6 (W.D. Wash. July 11, 2008), *aff'd,* 395 Fed. App'x 476 (9th Cir. 2010); *Lumpkin v. E.I. Du Pont de Nemours & Co*., 161 F.R.D. 480, 481-82 (M.D. Ga. 1995); *Advanced Acupuncture Clinic, et al. v. Allstate Insurance Company, et al*., No. 07-4925, 2008 WL 4056244, *15 (D.N.J. August 26, 2008), *aff'd on other grounds,* 2009 WL 2171221 (3d Cir. July 22, 2009).

9

Where individualized issues necessarily predominate over common ones, a case cannot proceed as a class action under Rule 23(b)(3).  For example, in *Saunders*, the court dismissed the class allegations because, as here, the "individualized factual inquiries predominate over any class-wide issues," and therefore "the Plaintiffs' class allegations fail under Rule 23(b)(3) as a matter of law."  *Saunders*, 1998 WL 1051961, *2.

In *Vandenbrink*, the court dismissed the class allegations because, again as here, individualized issues predominated as a matter of law: "the threshold inquiry is whether the Plaintiffs were made whole through their settlements.  If this case were to proceed, the most important issues to settle will be individual in nature.  The issues will include the damages incurred by an individual plaintiff, the amount of the settlement, and the portion of the settlement that actually was for medical payments.  Since the individual factual inquiry will predominate this litigation, making any sort of class litigation highly impractical, the class allegations will be stricken."  *Vandenbrink*, 2012 WL 3156596, *3.

Applying the above principles here, Plaintiffs' class action allegations should be dismissed because these allegations cannot, as a matter of law, satisfy the predominance of common issues class action prerequisite.  Plaintiffs' liability theory is that Defendants allegedly failed to reimburse Plaintiffs and the putative class the full amount supposedly due for "conditional payments" they purportedly made as secondary payers.  This requires numerous individualized determinations for each and every class member with respect to each and every one of the applicable medical transactions.

Significantly, courts have often found class action treatment inappropriate on the ground that issues related to the reasonableness and necessity of medical expenses are inherently individualized.  That is what led the *Ocean* court to reject class action treatment in this very

context, stating, in language equally applicable here: "Proof that certain medical bills paid by MSPA's alleged assignor should have been paid by Ocean Harbor as a primary payer will not establish that other medical bills paid by a different MAO should also have been paid by Ocean Harbor as a primary payer.  To the contrary, proof to establish liability will necessarily devolve into a series of mini-trials . . . which precludes a finding of predominance and renders this case inappropriate for class action treatment."  261 So. 3d at 639 (citation omitted).  *See also DWFII Corp. v. State Farm Mut. Auto. Ins. Co.*, 271 F.R.D. 676, 683-84 (S.D. Fla. 2010), *aff'd*, 469 Fed. App'x 762 (11th Cir. 2012) (class action treatment inappropriate where, among other things, each putative class member would have to establish that treatment was medically necessary and the charge therefor was reasonable); *Premier Open MRI v. Allstate Ins. Co.*, No. 16-2003-CA-004498, 2005 WL 6058681, *1 (Cir. Ct. Duval Cty. Fla. Jan. 7, 2005) (same).  Indeed, there is a consistent body of law throughout the country holding to this effect.  *See e.g., Halvorson v. Auto-Owners Ins. Co.*, 718 F.3d 773, 779 (8th Cir. 2013); *Advanced Acupuncture*, 2008 WL 4056244, *13; *Gloria v. Allstate County Mutual Insurance Company*, C/A SA-99-CA-676-PM, 2000 WL 35754563, *9 (W.D. Tex. Sept. 29, 2000); *Ross-Randolph v. Allstate Ins. Co.*, No. DKC-99-3344, 2001 WL 36042162, *6 (D. Md. May 11, 2001); *Johnson v. GEICO Cas. Co.*, 310 F.R.D. 246, 255 (D. Del. 2015), *aff'd*, No. 16-1132, 2016 WL 6958431 (3d Cir. Nov. 29, 2016); *Ostrof v. State Farm Mut. Auto. Ins. Co.*, 200 F.R.D. 521, 531 (D. Md. 2001).

For example, in *DWFII*, 271 F.R.D. at 683-84, the court held:

> [R]egardless of whether State Farm followed a policy of automatically applying NCC edits to every bill, State Farm has the right and ability to introduce individualized evidence to prevail on each breach of contract claim.  Each putative class member, for each alleged underpayment, *i.e.* each alleged breach of contract, will have to prove the following details about its entitlement to reimbursement: that the insured had valid insurance coverage and his benefits were unexhausted, that the provider actually performed

the services for which it billed; *that the treatment(s) the provider performed was "medically necessary" pursuant to section 627.736(1)(a), that the provider billed for "reasonable amount[s]"* pursuant to section 627.736(5)(a), and that the bill the provider submitted was properly completed pursuant to section 627.736(5)(d).  There are no common issues of fact that relieve each plaintiff of a substantial portion of this individual evidentiary burden.

(Emphasis added.)

For similar reasons, a Florida appeals court reversed a trial court's ruling that a PIP insurer could not decline to pay less than the full amount of a medical bill based in part on a computerized bill review.  *State Farm Mut. Auto. Ins. Co. v. Sestile*, 821 So. 2d 1244 (Fla. 2d DCA 2002).  The court found it was "not a court's function to determine, across the board, that an insurer's internal method of gauging reasonableness does or does not comply with the statute." *Id.*  Rather, a fact-finder would need to determine, on a case-by-case basis, whether the insured met its burden to prove each bill reasonable and that the insurer failed to pay a reasonable amount:

> The fact-finder must construe the word 'reasonable' and determine whether the insurance company's evaluation of medical bills fits the definition on a case-by-case basis....  If an insurer refuses to pay medical expenses that an insured believes are reasonable, the insured may sue, but he or she bears the burden of establishing that the charges are, in fact, reasonable.  In some cases, a computer database may accurately assess the reasonableness of a medical provider's bill; in other cases, it may be far from the mark.  But this is the insured's burden to prove.

*Id.* at 1246 (citations omitted).

Applying *Sestile*, another court dismissed the class action allegations in a case where, as here, the plaintiff challenged the method the insurer used to determine the appropriate amount to pay for PIP benefits.  *MRI Associates of St. Pete, Inc. v. State Farm Mut. Auto. Ins. Co.*, 755 F. Supp. 2d 1205, 1208 (M.D. Fla. 2010).  Because what constituted a reasonable amount would vary "based on many factors specific to the individual claim," the court found "[t]he evaluation

of a reasonable amount rests on an examination of the various factors on a case-by-case basis and can only be determined by a factfinder." *Id.* Further, "different fact-finders may reach different conclusions from the same facts." This inherent need for individualized evaluation, the court found, "is exactly why the court in *Sestile* held these types of cases were not appropriate for a class action proceeding." *Id.*

Likewise, in *Gloria v. Allstate County Mutual Insurance Company*, C/A SA-99-CA-676-PM, 2000 WL 35754563 (W.D. Tex. Sept. 29, 2000), the plaintiffs alleged the defendant insurer improperly reduced medical bills under their PIP coverage by using a flawed medical bill review system. In dismissing the class action allegations, the court stated, in language equally applicable here (footnotes omitted):

> Conclusory class allegations, such as those pleaded by plaintiffs here, have been deemed suitable for dismissal early in the case. When plaintiffs' allegations are analyzed in light of the prerequisites of Rule 23, plaintiffs have not alleged common issues that predominate. Instead, issues such as whether a particular provider's charge was reasonable and/or necessary for a particular treatment for a particular injury in a particular location must be determined on an individualized basis. Each putative plaintiff would be required to prove entitlement to benefits under the terms of the policy and that the medical expenses were reasonable and the services were necessary. Moreover, even if plaintiffs prove the computerized evaluation of the PIP claims was flawed the parties and the court still will need to analyze each charge on every claim for reasonableness and necessity.

*Id.* *9 (footnotes omitted).

The same types of issues, which, again, are apparent from the face of the Complaint, also preclude class action treatment here as a matter of law. For each and every putative class member, each and every medical bill, and each and every line item for which Defendants supposedly owe primary payments, there would have to be a separate mini-trial to determine whether the charge was reasonable and whether the treatment allegedly provided to Defendants'

insured was necessary and related to the subject automobile accident.  And Plaintiffs' claims related to third-party liability insurance raise even more predominating individualized issues.  As demonstrated above, highly case specific questions such as the following would have to be addressed for each putative class transaction: (1) What was claimed and released as part of the settlements? (2) Were any and all claims related to the beneficiaries' purported accidents asserted and released? (3) Did the settlements include items for which an MAO made payment?

As also demonstrated above, Plaintiffs cannot circumvent these predominating individualized issues with their "conclusive proof" and "administrative appeals" theories, which fail for all the reasons discussed.  In any event, Plaintiffs allege only that an MAO's payment is conclusive proof of reasonableness and necessity, *not* of the relatedness of the expenses to the insured's accident.  So, there would still be predominating individualized issues concerning whether each and every disputed medical transaction was related to the insured's relevant automobile accident: *e.g.,* (1) What health conditions did the claimant/beneficiary suffer; (2) Was the expense at issue for treatment for an injury or condition wholly unrelated to the accident -- *e.g.,* cancer, arthritis, a prior surgery that had nothing to do with the insured's accident; and (3) Was the charge at issue one for which an MAO made a conditional payment in connection with an accident.

The above examples of the individualized issues that will have to be determined to resolve this case demonstrate that no class can be certified here because, as a matter of law, common issues will not predominate.  And the fact that Plaintiffs purport to represent a nationwide class makes class treatment even more legally untenable.

As the Fifth Circuit recently emphasized, where "a proposed class stretches across multiple jurisdictions, we have underscored that a Rule 23(b)(3) analysis must carefully consider

variations in pertinent state laws." *Cruson v. Jackson National Life Ins. Co*., 954 F.3d 240, 254, (5th Cir. 2020).  The court further stated:

> [I]n a class action governed by the laws of multiple states, ... "variations in state law may swamp any common issues and defeat predominance."  The party seeking certification of a nationwide class must therefore "provide an 'extensive analysis' of state law variations to reveal whether these pose 'insuperable obstacles.'"  And the district court must then "consider how [variations in state law] affect predominance."  Failure to engage in an analysis of state law variations is grounds for decertification.

*Id.* at 254-55 (quoting *Cole v. Gen. Motors Corp.*, 484 F.3d 717, 724 (5th Cir. 2007)).  *See also Castano v. Am. Tobacco. Co.*, 84 F. 3d 734, 741 (5th Cir. 1996) (same principle).  To conduct a predominance inquiry, the Court must go beyond the pleadings and "understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues."  *Castano,* 84 F.3d  at 744 ("A district court's duty to determine whether the plaintiff has borne its burden on class certification requires that a court consider variations in state law when a class action involves multiple jurisdictions … [and the court] must initially identify the substantive law issues which will control the outcome of the litigation."   *Id.* (internal quotation marks and citations omitted).  *See also Casa Orlando Apartments, Ltd. v. Fed. Nat. Mortg. Ass'n*, 624 F.3d 185, 194 (5th Cir. 2010) ("the court must find 'that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'   Here, Plaintiffs seek to certify a nationwide class for a state common law claim.  In a multi-state class action, variations in state law may swamp any common issues and defeat predominance.  In order for common issues to predominate and justify a (b)(3) certification, each state must have the same standards for establishing a fiduciary relationship and breaching the resulting duty.") (citations, internal

quotations and footnote omitted); *Stirman v. Exxon Corp.,* 280 F.3d 554, 564 (5th Cir. 2002) (district court abused its discretion in certifying multi-state class alleging lessee had breached implied covenant to market natural gas where district court's analysis did not take into account significant variations in state law that defeated predominance); *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 946-48 (6th Cir. 2011) (affirming trial court's dismissal of class allegations, largely on the basis that application of different states' laws would make it difficult and impracticable to manage a class action); *Thompson v. Jiffy Lube Int'l, Inc.*, 250 F.R.D. 607, 628 (D. Kan. 2008) (finding forum choice of law rules "would likely dictate that the laws of each state where prospective class members took their vehicles for service would govern the tort claims of such class members [which] weighs heavily against typicality, as the disparities and conflicts between the law governing plaintiff's claims and the laws governing other class members places plaintiff's claims on a different legal footing and subject to different legal standards than the claims of a *significant* portion of putative class members.") (citation omitted).

For example, in *Casa Orlando*, even where the basic principles related to the applicable law were the same in all states, the court still found class action treatment inappropriate, stating: "the nuances vary, and those nuances affect the outcome of claims."   624 F.3d at 194-95 (discussing examples of nuances among different states' laws that affected outcome of the claims).  Similarly, in *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, No. 14-2722, 2020 WL 444292, at *6 (E.D. La. Jan. 28, 2020), the court found state law variations precluded class certification:

> Plaintiffs raise a variety of claims, including claims for property damage, personal injuries, negligence, negligence per se, strict liability, breach of warranty, redhibition, Louisiana Products Liability Act, private nuisance, and negligent discharge of a corrosive substance, as well as injunctive relief.  The Plaintiffs are domiciled in five different states, and accordingly their claims arise

> under five different states' laws and are subject to various
> applicable burdens of proof and defenses.  The Court heeds the
> Fifth Circuit's warning that "[i]n a multi-state class action,
> variations in state law may swamp any common issues and defeat
> predominance."  *Castano*, 84 F.3d at 741.  Based on the variety in
> the individual claims and the fact that, were the cases to go to trial,
> they would involve different theories of liability, different state
> laws, different applicable defenses, and different damage
> calculations, the Court is not convinced that the common issues of
> liability predominate over the individual issues.

Applying the above principles, courts have routinely found nationwide or multi-state class treatment of claims arising from contracts, such as the insurance policies at issue here, unworkable.  *See, e.g., Marino v. Home Depot U.S.A., Inc.,* 245 F.R.D. 729, 735 (S.D. Fla. 2007) ("Florida contract law cannot apply to every potential class member on a nationwide basis. . . . [The] contracts were negotiated and entered into entirely in different states, each with its own law of contracts."); *Clausnitzer v. Fed. Exp. Corp.*, 248 F.R.D. 647, 654 (S.D. Fla. 2008) (same principle); *Karhu v. Vital Pharm., Inc.*, No. 13-60768-CIV, 2014 WL 815253, at *11 (S.D. Fla. Mar. 3, 2014), *aff'd,* 621 F. App'x 945 (11th Cir. 2015) (same); *McBride v. Galaxy Carpet Mills, Inc.*, 920 F. Supp. 1278, 1286 (N.D. Ga. 1995) (same).

Here. because "an MSP claimant may not recover amounts from a purported 'primary plan' in excess of a carrier's responsibility under state law or the relevant contract," *Caldera,* 716 F.3d at 865, those claims would necessarily be governed by all the states' varying no-fault, contract, and insurance laws.  And, notably, courts have rejected nationwide class treatment for this very reason.

For example, in *Innovative Physical Therapy, Inc. v. Metlife Auto & Home*, No. CIV A 07-5446 (JAP), 2008 WL 4067316, at *10 (D.N.J. Aug. 26, 2008), *aff'd on other grounds sub nom. St. Louis Park Chiropractic, P.A. v. Fed. Ins. Co.*, 342 F. App'x 809 (3d Cir. 2009), the court stated, in language equally applicable here:

17

> [T]he laws of each of the potential class members' home states conflict. PIP insurance coverage differs between states and are governed by statute. PIP statutes address issues such as specifying what type of medical expenses must be covered, what amounts insurers are obligated to pay, or whether insurers are permitted to coordinate their PIP payments for medical expenses with payments from other sources. A survey of the relevant PIP statutes indicates that differences, such as these, result in individualized issues.

The court held that the differences among the state PIP laws resulted in individualized issues that precluded class treatment. *Id. See also Advanced Acupuncture*, 2008 WL 4056244, at *11 (same; holding need to apply fifty different state PIP laws rendered the class action unmanageable as a matter of law).

*MSPA Claims 1, LLC v. Covington Specialty Ins. Co.*, No. 19-21583-CIV, 2020 WL 5984382, at *15 (S.D. Fla. May 12, 2020), *report and recommendation adopted,* No. 19-21583-CIV, 2020 WL 5982020 (S.D. Fla. Oct. 8, 2020), and other similar cases, where some courts have denied these sorts of motions because, in their view, the better course is to defer ruling on class issues until after class discovery, are not persuasive. Defendants respectfully submit that no amount of discovery will obviate the highly case-specific issues discussed above which exist here as a matter of law. As a result, it makes no sense for the Court or the parties to expend the time and resources on full-blown, *in terrorem* class certification proceedings, including the costly discovery this plaintiff group typically seeks in these cases, when none of that discovery can ever support class certification. *See, e.g., Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1276 (11th Cir. 2019) (referring to the "in terrorem character of a class action" because of the substantial costs and consequent pressure to settle even meritless claims caused to defendants thereby); *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 678 (7th Cir. 2009) (same principle).

### III.   IN ALL EVENTS, THE COMPLAINT FAILS AGAINST FOUR OF THE DEFENDANTS BASED ON LACK OF PERSONAL JURISDICTION.

Courts lack personal jurisdiction over defendants that do not conduct relevant business in Florida.  *See, e.g., Virgin Health Corp. v. Virgin Enterprises Ltd.*, No. 08-22557-CIV, 2009 WL 10668149, at *3-44 (S.D. Fla. Feb. 12, 2009), *aff'd,* 393 Fed. App'x 623 (11th Cir. 2010); *Turi v. Stacey*, No. 5:13-CV-248-OC-22PRL, 2015 WL 403228, at *12-15 (M.D. Fla. Jan. 28, 2015), *aff'd,* 627 F. App'x 904 (11th Cir. 2015) (same principle); *Erie Ins. Exch. v. Larose*, 202 So. 3d 148, 155 (Fla. 2d DCA 2016) (same principle).  This bedrock jurisdictional principle was applied in *MSP Recovery Claims, Series LLC v. Farmers Ins. Exch.*, No. 217CV02522CASPLAX, 2018 WL 5086623, at *7 (C.D. Cal. Aug. 13, 2018), yet another case brought by this plaintiff group.  There, three of the defendants had their principal places of business and issued insurance policies in states other than California.  The Defendants also submitted declarations averring that they did not write or issue policies in California.  The court agreed that it lacked personal jurisdiction over these defendants, stating:  "Plaintiffs cite no authority for the proposition that a court may exercise personal jurisdiction over a defendant having no relevant forum contacts merely because jurisdiction is proper over its co-defendants and the claims involve a common nucleus of operative facts.  Accordingly, plaintiffs may not rely on pendent personal jurisdiction.  Because plaintiffs fail to allege facts sufficient to exercise personal jurisdiction over these defendants, the Court dismisses all claims against [these defendants]."  *Id.,* at *8.

Applying the above principles here, personal jurisdiction does not exist over four of the Defendants, Unitrin Auto and Home Insurance Company, Infinity Select Insurance Company, Warner Insurance Company, and Response Worldwide Insurance Company, as these entities do not write any premium or issue any insurance policies in Florida.  *See* Declaration of Rodrick Osborn, Exhibit B hereto, ¶ 4.  So, apart from Plaintiffs' pleading deficiencies, at the very least these four Defendants should be dismissed from this action.

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request this Court to enter an order dismissing this action in its entirety or, alternatively, dismissing the class action allegations, and in all events dismissing the four Defendants over which jurisdiction does not exist.

Respectfully submitted,

GUNSTER
600 Brickell Avenue, Suite 3500
Miami, Florida  33131
Telephone:  305-376-6000
Facsimile:  305-376-6010
acortinas@gunster.com

By:  /s/ Angel A. Cortiñas
          Angel A. Cortiñas

## CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2020, the foregoing was filed using the Court's CM/ECF system and served via email or transmission of Notices of Electronic Filing generated by CM/ECF to all counsel of record by the Court's CM/ECF system.

By:  /s/ Angel A. Cortiñas