UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:20-cv-24128-KMW

MSP RECOVERY CLAIMS, SERIES LLC,
*et al*.,

      Plaintiffs,

v.

INFINITY AUTO INSURANCE
COMPANY, *et al*.,

      Defendants.
_____/

**PLAINTIFFS' MOTION TO DISQUALIFY DEFENDANTS'
COUNSEL WITH SUPPORTING MEMORANDUM OF LAW**

Plaintiffs, MSP Recovery Claims, Series LLC ("MSPRC"), MSPA Claims 1, LLC ("MSPAC"), and MAO-MSO Recovery II LLC, Series PMPI, a segregated series of MAO-MSO Recovery II LLC, ("MAO-MSO") (collectively "Plaintiffs"), respectfully move this Court for an order disqualifying Defendants' counsel and the Gunster law firm ("Gunster") collectively "Defense Counsel"), from representing Defendants, Infinity Auto Insurance Company, Response Worldwide Insurance Company, Warner Insurance Company, Infinity Insurance Company, Alpha Property & Casualty Insurance Company, Infinity Select Insurance Company, Infinity Indemnity Insurance Company, Response Insurance Company, Unitrin Direct Property & Casualty Company, and Unitrin Auto and Home Insurance Company (collectively "Defendants"), as a result of conflicts of interest. In support thereof, Plaintiffs state as follows:

**INTRODUCTION**

Plaintiffs commenced this action against Defendants for their systematic and uniform failure to honor their primary payer obligations under the Medicare Secondary Payer provisions of the Social Security Act (the "MSP Act"), 42 U.S.C. § 1395y et seq., by failing to reimburse medical items and services resulting from injuries sustained in automobile and other accidents ("accident-related treatment"). As the Eleventh Circuit has recognized, when this occurs,

downstream health care providers can sue primary payers for nonpayment. *See MSP Recovery Claims, Series, LLC v. ACE Am. Ins. Co.*, 974 F.3d 1305 (11th Cir. 2020).

The Eleventh Circuit has recognized Defendants' constructive knowledge of their liability for every claim identified on the Complaint's Exhibit A. [ECF No. 1-1]. As the Eleventh Circuit noted in *Ace*:

> Plaintiffs alleged that they chose which claims to bring by comparing their assignors' claims data against two set of documents: Defendants' filing with HHS under 42 U.S.C. § 1395y(b)(7)-(9), which obligates insurers like Defendants to report the claims for which they are primary payers, and certain of Defendants' settlement agreements to which [Plaintiffs] had access. The filings with HHS evidence Defendants' knowledge that they owed primary payments, including the primary payments for which Plaintiffs seek reimbursement. For the remaining claims, Defendants' settlement agreements with beneficiaries show, at minimum, that Defendants had constructive knowledge that they owed the primary payments.

*Ace*, 974 F.3d at 1319. The Eleventh Circuit has opined on Plaintiffs' ability to demonstrate Defendants' awareness, finding that "Plaintiffs have plausibly alleged Defendants' actual or constructive knowledge[.]" *Id.* Furthermore, the Eleventh Circuit found that "[t]he language of § 1395y(b)(3)(A) . . . is easily read to cover downstream actors who have borne the cost of a conditional payment ***and thus have suffered damages***." *Ace*, 974 F.3d at 1314 (emphasis added). *Ace* held that "when a downstream actor bears the cost of an MAO's conditional payments, that downstream actor suffers an injury squarely within the ambit of the Medicare Secondary Payer Act." *Id.* at 1316. As such, downstream actors have standing to pursue an action under the MSP Act's private cause of action for double damages. *Id.* In sum, the Eleventh Circuit has foreclosed Defendants' arguments. Plaintiffs may seek reimbursement as an assignee of MAOs and downstream actors for unreimbursed conditional payments. *Id.* at 1316.

Following *Ace*, Plaintiffs conducted an in-depth analysis of their claims data and identified numerous instances wherein Defense Counsel represents both a first[1] and third-party insurer[2]

---

[1] First-party insurers in this context refer to no-fault insurance. i.e. "insurance that pays for medical expenses for injuries sustained on the property or premises of the insured, or in the use, occupancy, or operation of an automobile, regardless of who may have been responsible for causing the accident. This insurance includes but is not limited to automobile, homeowners, and commercial plans. It is sometimes called 'medical payments coverage,' 'personal injury protection,' or 'medical expense coverage.'" 42 C.F.R. § 411.50(b).

[2] Third-party insurers in this context refer to "[l]iability insurance … (including a self-insured plan) that provides payment based on legal liability for injury or illness or damage to property. It

2

stemming from the same accident involving the same Medicare beneficiary ("Enrollee") in a matter substantially similar to the present controversy (*See* Exhibit **A**).

Plaintiffs' research and investigation disclosed a number of instances where Plaintiffs are seeking to recover unreimbursed conditional payments related to claims where: (i) Defendants reported their primary payer obligation under either a first-party or third-party policy to the Centers for Medicare & Medicaid Services ("CMS") pursuant to Section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007 ("Section 111") or reported the existence of the claim to Insurance Services Office ("ISO"); (ii) another first-party or third-party insurer exists for the same instance reported by Defendants and involving the same Enrollee; and (iii) the other first-party or third-party insurer was formerly or is currently also represented by Gunster (herein after, the "Other Gunster Clients") for the same instance. These representations constitute impermissible and nonwaivable conflicts of interest and are plainly violative of the Florida Bar's conflict of interest rules. Indeed, in a similar matter, Judge Miller of the Eleventh Judicial Circuit Court entered an Order finding that Plaintiffs had standing to pursue disqualification of Defense Counsel's attorney. (*See* Exhibit **B**, *Order*). Immediately after the circuit court entered its order, Akerman filed a petition for writ of certiorari in the Third District Court of Appeal in the matter of *Akerman, LLP and Valerie Greenberg, Esq. v. MSP Recovery Claims, et al.*, Case No. 3D21-0191, where it challenged the circuit court's determination that the Plaintiffs possessed standing and that an evidentiary hearing was required. On February 24, 2021, the Third District denied Defense counsel's Petition. (*See* Exhibit **C**, *Order Denying Petition*).

To date, Defense Counsel has failed to provide a scintilla of evidence to rebut any of the conflicts. In fact, Plaintiffs' counsel has requested copies of conflicts of interest waivers from Defense Counsel on numerous occasions, but Defense Counsel has been unresponsive. (*See* Exhibit **D**, *Correspondence from Plaintiffs' counsel seeking waiver*).

## **THE IRRECONCILABLE CONFLICTS**

At the center of the parties' dispute here is the question of whether the reimbursements owed to Plaintiffs are the responsibility of Defendants or Other Gunster Clients. Defendants will contend that the Other Gunster Clients, as first-party or third-party insurers, are primarily

---

includes, but is not limited to, automobile liability insurance, uninsured motorist insurance, underinsured motorist insurance, homeowners' liability insurance, malpractice insurance, product liability insurance, and general casualty insurance." 42 C.F.R. § 411.50(b).

responsible for reimbursing Plaintiffs for the accident-related conditional payments at issue, whereas the Other Gunster Clients will allege that Defendants are in fact the responsible primary payers. In other words, any time that Gunster advances an argument on behalf of Defendants, it takes a position contrary to the Other Gunster Clients' interests

Defense Counsel's representation of the Other Gunster Clients commenced in or around July 2014 and continues today. Defense Counsel has advised Defendants and the Other Gunster Clients as it pertains to compliance with the MSP Act generally, and also specifically as to the disposition of claims identified on the Complaint's Exhibit A. [ECF No. 1-1]. During this time, Gunster has, among other things:

- Drafted legal documents, such as pleadings, advancing arguments adverse to the interests of Defendants and in favor of their Other Gunster Clients;

- Reviewed Defendants' and the Other Gunster Clients' internal documents, such as payout logs, which contain confidential information adverse to the interests of Defendants and in favor of the Other Gunster Clients;

- Performed an in-depth analysis of Defendants' and the Other Gunster Clients' MSP Act liability;

- Attended hearings and settlement conferences on behalf of the Other Gunster Clients advocating for a position contrary to the interests of Defendants; and

The issues raised in this litigation are directly related to issues discussed during Defense Counsel's representation of the Other Gunster Clients. Critically, a review of Section 111 reporting instances, ISO data, and police and incident crash reports indicates that the arguments Defense Counsel is likely to advance on behalf of Defendants in this litigation are contrary to the interests of the Other Gunster Clients. Accordingly, Defense Counsel's representation of Defendants is conflicted, and should be disqualified and not permitted to continue in this case.

## FACTUAL BACKGROUND

Attached to Plaintiffs' Complaint (ECF No. 1-1) is a list of 869 instances where Defendants admitted by reporting to CMS that they were contractually obligated to provide primary payments on behalf of Enrollees for injuries sustained in automobile or other accidents, reported the existence of the claim to ISO and/or were identified in police crash and incident reports as an insurer. Included in the 869 instances are 295 unique instances, attached hereto as **Exhibit E**,

wherein Defense Counsel represents both Defendants and another Gunster Client whose policies are implicated in the same injury-causing automobile accident involving the same Enrollee.[3]

For further illustration, for the claim of Enrollee W.W., Gunster represents Infinity, the first-party insurer, and Allstate Insurance Company ("Allstate"), the third-party insurer. Both insurance carriers have responsibility for medical items and services stemming from an automobile accident that occurred on or around July 7, 2015. Plaintiffs' assignor was billed $18,164.52 for accident-related expenses, which were supposed to be paid for or reimbursed by Defendants and/or Allstate. As described in the ISO report attached hereto as **Exhibit F**, Allstate and Infinity are both primary payers for W.W.'s accident-related treatment. The instant the automobile accident occurred, and injury resulted, the interests of Defendants and Allstate became adverse. (*See* Exhibit **G,** *Affidavit of Christopher Miranda*).

As a result of the conflict, both Defendants and Allstate have direct exposure for W.W.'s accident-related medical expenses amounting to $18,164.52. When Gunster raises any argument in defense of Defendants, such as that Defendants exhausted benefits, or that notice was required pursuant to 627.736(10), or that the medical expenses were not covered under their policy, Gunster attempts to shift liability to Allstate, the third-party insurer.

In numerous cases, Defense Counsel has persistently raised the same defense arguments in direct conflict with Other Gunster Clients. If any court rules in Defendants' favor on the defenses raised on behalf of the first-party defendant, the third-party Other Gunster Client would be adversely affected. Gunster's arguments place the Other Gunster Clients that are third-party primary payers in direct conflict. As such, any defense Gunster raises for the jointly represented Other Gunster Clients (whether first-party or third-party defendants) will adversely affect Defendants by shifting liability from the Other Gunster Client to Defendants.

As counsel for the insurance company providing benefits to W.W. under a first-party policy of insurance, Gunster must advise Defendants that Allstate is ultimately responsible for primary payment as the liable third-party insurance policy. Conversely, Gunster must advise Allstate that

---

[3] Plaintiffs are required to cross-reference the conflicted claims based on identified claims and claims that are part of the putative class. Plaintiffs' database has approximately 3.4 million claims that can (at any time) rise to a conflict based on the data matched in ongoing cases resulting in the identification of additional claimants. For example, Plaintiffs' review in the instant matter led to the identification of 869 instances of conflict. *See* **Exhibit E** *Conflict Analysis*. Additional claims may continue to illustrate additional conflicts as data matching in other proceedings continue.

Defendants are primary payers who must first properly exhaust benefits before any payment should be made by Allstate. In sum, if Defendants pay less, then Allstate has to pay more and vice versa. This example clearly highlights the irreconcilable conflict of issues that exist and will continue to develop if Defense Counsel continues to simultaneously represent Defendants and Other Gunster Clients.

## LEGAL ARGUMENT AND MEMORANDUM OF LAW

A motion to disqualify counsel is the proper method for party-litigants to bring before the court issues of conflict of interest or breach of ethical duties. *See Musicus v. Westinghouse Elec. Corp.,* 621 F.2d 742, 744 (5th Cir. 1980); *see also Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (adopting as binding precedent all decisions of the Former Fifth Circuit rendered prior to October 1, 1981).

The party moving to disqualify counsel bears the burden of proving the grounds for disqualification. *See In re: BellSouth Corp.,* 334 F.3d 941, 961 (11th Cir. 2003). When ruling on a motion to disqualify, a court must "be conscious of its responsibility to preserve a reasonable balance between the need to ensure ethical conduct on the part of lawyers appearing before it and other social interests, which include the litigant's right to freely choose counsel." *Woods v. Covington County Bank*, 537 F.2d 804, 810 (5th Cir. 1976). Disqualification of a party's chosen counsel is granted when compelling reasons exist for doing so. *In re: BellSouth Corp*., 334 F.3d at 961.

Indeed, the need to ensure adherence to the highest ethical standards for professional responsibility has led Florida courts to use their inherent power to disqualify counsel where necessary to safeguard clients from conflicted attorneys, and the profession from the appearance of impropriety. *See BioMatrix Specialty Pharmacy, LLC v. Horizon Healthcare Servs., Inc.,* No. 18-61680-CIV, 2018 WL 6812842, at *5-6 (S.D. Fla. Dec. 27, 2018); *State Farm Mut. Auto. Ins. Co. v. Kugler*, No. 11- 80051-CIV, 2012 WL 12868734, at *4 (S.D. Fla. July 2, 2012), report and recommendation adopted, No. 11-80051, 2012 WL 12868735 (S.D. Fla. July 19, 2012); *Arnett v. Mid-Cont'l Cas. Co.,* No. 8:08-CV-2373-T-27EAJ, 2009 WL 10670499, at *2 (M.D. Fla. Nov. 19, 2009).

Where an alleged ethical violation exists, the district court must identify the applicable rule of professional conduct and determine whether the charged attorney violated that rule. *Schlumberger Tech., Inc. v. Wiley*, 113 F.3d 1553, 1561 (11th Cir. 1997). "Attorneys practicing in

the Southern District of Florida are governed in their professional conduct by the Rules Regulating the Florida Bar." *Suchite v. Kleppin*, 784 F. Supp. 2d 1343, 1345 (S.D. Fla. 2011). Accordingly, Comments to the Rules of Professional Conduct indicate that opposing counsel may request disqualification. Thus, where a conflict "is such as clearly to call in question the fair and efficient administration of justice, opposing counsel may properly raise the question." Comment to Rule Regulating the Florida Bar 4-1.7.

## ARGUMENT

### A. Disqualification of Gunster Is Appropriate Pursuant to Rule 4-1.7, Florida Bar Rules of Professional Conduct

Rule 4-1.7 concerns conflicts of interests with current clients and provides that a lawyer shall not represent a client if:

(1) The representation of one client will be directly adverse to another client; or
(2) There is a substantial risk that the representation of one or more clients will be materially limited to the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

R. Regulating Fla. Bar 4-1.7.

Rule 4-1.16(a)(1) states that unless a court orders otherwise, "a lawyer **shall not** represent a client or, where representation has commenced, **shall withdraw** from the representation of a client if … the representation will result in violation of the Rules of Professional Conduct or law." R. Regulating Fla. Bar 4-1.16(a)(1) (emphasis added).

The decision in *The Florida Bar v. Mastrilli*, 614 So. 2d 1081 (Fla. 1993), is particularly apposite, as it required disqualification of an attorney who filed suit against his own client in the same matter for which he had been retained. In that case, Mastrilli undertook representation of two women who were both allegedly injured in an accident where one woman was the driver and the other woman was the passenger in the same vehicle. Mastrilli issued demand letters on behalf of the passenger against the insurance carrier of the driver on grounds that the driver had been negligent. When the insurance company denied payment, Mastrilli then filed suit against the driver on behalf of the passenger. In effect, Mastrilli filed suit against his own client in the same matter for which he had been retained.

The Florida Supreme Court held that Mastrilli either knew or should have known of the conflict; and there was a potential that his actions would expose his client, the driver, to personal

7

liability. *Id*. Accordingly, the Supreme Court suspended Mastrilli from the practice of law for a period of six months.

Like *Mastrilli*, the instant case involves Gunster's representation of two insurers, the Other Gunster Clients and Defendants, that are both responsible for reimbursing the same accident-related treatment expenses paid by Plaintiffs' Assignors. Plaintiffs' claim against Defendants includes a violation of the MSP Act. Hence, ascertaining whether the Other Gunster Clients are responsible to pay for the accident-related treatment expenses Plaintiffs' Assignors made on behalf of their Enrollees as a result of an accident is not only necessary but required under the MSP Act to determine Defendants' liability.

This district reviewed a similar case, *Bedoya v. Aventura Limousine & Transp. Serv., Inc.*, 861 F. Supp. 2d 1346 (S.D. Fla. 2012), and granted a defendants' motion to disqualify the plaintiffs' counsel and law firm. In *Bedoya*, the plaintiff's attorney inappropriately had ex parte communications with an officer of the defendant's company in connection with a court-ordered arbitration in another case, in violation of Florida Bar Rule 4-4.2. *Id.* at 1353. The plaintiff's attorney also had ex parte communications with the independent contractor that performed greeting work for the defendant's company, in order to review and sign an affidavit in support of the plaintiff's motion for conditional collective action certification, again in violation of Florida Bar Rule 4-4.2. *Id.* at 1361-62. Judge Altonaga held that the "appropriate remedy in this matter is to disqualify" plaintiff's counsel and the firm because, due to "the egregiousness of the Florida Bar Rule violations . . .the severity of the remedy matches that of the violations." *Id.* at 1373.

Markedly, the *Bedoya* court did not undergo any analysis regarding the moving party's standing to file the motion to disqualify the plaintiff's counsel and his firm and based their ruling on the indisputable assertion that "the Court is empowered to grant relief to the extent necessary to protect the integrity of proceedings before it." *Id*. at 1357. Thus, the standard is not whether the movant "stands in the shoes" of a current or former client, but rather whether the conflict of interest involves representation of someone other than the movant and where it is such "as clearly to call in question the fair or efficient administration of justice." *Boca Raton Reg'l Hosp., Inc. v. Williams*, 230 So. 3d 42, 45 (Fla 4th DCA 2017).

Similar to the Florida Bar violations in *Bedoya*, Gunster is exposing Defendants to liability by representing the Other Gunster Clients and perpetuating the outstanding conflict. When Gunster undertook representation of both Defendants and the Other Gunster Clients, Gunster knew or

8

should have known that their interests were adverse. Gunster is a law firm of experienced commercial litigators and currently represents forty-two (42) insurance carriers in seventeen (17) active cases that involve the same exact accident involving a claim to the exact secondary payments in the instant action. This impermissible dual representation is precisely the type of behavior Rule 4-1.7, Florida Bar Rules of Professional Conduct, sought to prohibit. Similar to this Court's ruling in *Bedoya*, Gunster's violation of (and disregard for) Rule 4-1.7 of the Florida Bar Rules warrants "the severity of the remedy." *Bedoya*, 861 F. Supp. 2d at 1373. Gunster has violated Rule 4-1.7, Florida Bar Rules of Professional Conduct, and should be disqualified.

### B. Disqualification of Gunster Is Appropriate Pursuant to Rule 4-1.9, Florida Bar Rules of Professional Conduct

Pursuant to Rule 4-1.9, Gunster should be disqualified from representing Defendants in this litigation as a result of the firm's prior representation of the Other Gunster Clients. That rule, which governs conflict of interests with former clients, provides:

> A lawyer who has formerly represented a client in a matter shall not thereafter:
>
> (a)     represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent;
>
> (b)     use information relating to the representation to the disadvantage of the former client except as these rules would permit or require with respect to a client or when the information has become generally known; or
>
> (c)     reveal information relating to the representation except as these rules would permit or require with respect to a client.

R. Regulating Fla. Bar 4-1.9.[4] In order to disqualify counsel under this rule, it must be shown that: "(1) an attorney-client relationship existed, thereby giving rise to an irrefutable presumption the confidences were disclosed during the relationship, and (2) the matter in which the law firm subsequently represented the interest to the former client was the same or substantially related to

---

[4] Rule 4-1.9 allows representation in substantially related matters where the former client has given "informed consent." However, there are certain conflicts that cannot be waived such as the one present in this case. *See The Florida Bar v. Feige,* 596 So.2d 433, 435 (Fla. 1992) (holding that when a conflict of interest inherent in a representation is so fundamental it cannot be condoned by a client, even with full disclosure); *see also The Florida Bar v. Scott,* 39 So. 3d 309 (Fla. 2010) (noting that "[s]ome kinds of conflicts of interest cannot be waived by a client" in holding that conflict at issue was un-waivable).

9

the matter in which it represented the former client." *State Farm Mut. Auto. Ins. Co. v. K.A. W.*, 575 So. 2d 630, 633 (Fla. 1991) (holding that the two-pronged test applies under Rules Regulating the Florida Bar); *see also U.S. Commodity Futures Trading Comm'n v. Hunter Wise Commodities*, No. 12-81311-CV, 2013 WL 12082739, *4 (S.D. Fla. Sept. 6, 2013) (disqualifying counsel under two-pronged test where counsel had advised former client on transactions at issue in litigation); *Ford v. Piper Aircraft Corp.*, 436 So. 2d 305,307 (Fla. 5th DCA 1983) (holding that it ". . . must show that the matters embraced in the pending suit are substantially related to the matters or cause of action wherein the attorney previously represented him, the former client."). Both elements are present here and Gunster should be disqualified as a result.[5]

It is important that plaintiffs are aggrieved. A party generally lacks standing to seek disqualification where there is no privity of contract between the attorney and the party claiming a violation of the Rules. However, the Rules authorize opposing counsel to raise the issue. Comments to R. Regulating Fla. Bar 4-1.7. The Florida Supreme Court has noted that the "[c]omments to the Rules of Professional Conduct indicate that under certain circumstances someone other than the client may seek disqualification . . . where a conflict 'is such as clearly to call in question the fair or efficient administration of justice.'" *State Farm Mut. Auto. Ins. Co. v. K.A.W.*, 575 So. 2d at 632 (quoting Comments to Rule 4-1.7); *see also Boca Raton Regional Hospital, Inc. v. Williams,* 230 So. 3d 42, 44 (Fla 4th DCA 2017).

In this case, there can be no reasonable dispute that Defense Counsel represented the Other Gunster Clients in actions arising from violations of the MSP Act. Gunster made an appearance in each of the cases delineated in **Exhibit A**. In fact, Gunster drafted several motions raising similar arguments for the Other Gunster Clients.

Gunster also had multiple e-mail correspondences and telephone conferences with Plaintiffs concerning settlement negotiations that must have been communicated to the Other Gunster Clients. There is an irrefutable presumption that confidences were shared during those communications. *See Young v. Achebauch*, 136 So. 3d 575, 583 (Fla. 2014) (holding that "[a] party seeking disqualification under rule 4-1.9 does not have to demonstrate actual prejudice to the former client as a result of the subsequent representation because the existence of an attorney client

---

[5] Where one lawyer in a firm is prohibited from representing a client under Rule 4-1.9, the entire firm is disqualified as well. *See* R. Regulating Fla. Bar 4-1.10.

10

relationship gives rise to an irrefutable presumption that confidences were disclosed.") (internal citations omitted). Clearly an attorney-client relationship exists.

"Matters are 'substantially related' for the purposes of this rule [Rule 4-1.9] if they involve the same transaction or legal dispute, or if the current matter would involve the lawyer attacking work that the lawyer performed for the former client." *Philip Morris USA Inc. v. Caro*, No. 4D16-2416, 2016 WL 7118833, *3 (Fla. 4th DCA Dec. 7, 2016) (citing R. Regulating Fla. Bar 4-1.9 comment); *see also Commodity Futures*, 2013 WL 12082739 at *4 (providing that substantially related matters "need only be akin to the present action in a way reasonable person would understand as important to the issues involved"). The matters in the instant case involve the same underlying accident for a claim to the exact secondary payments and involve Gunster's representation of the Other Gunster Clients – primary payer responsibility for accident-related treatment Plaintiffs' Assignors incurred on behalf of specific overlapping Enrollees. Matters in the instant case touch on the same accidents for which the Other Gunster Clients likewise issued policies covering Defendants' insureds. Thus, the Court need only determine whether Gunster and the former Other Gunster Clients may potentially have adverse interests in this case.

Here, Plaintiffs have alleged that Defense Counsel's Other Gunster Clients are jointly and severally liable for the accident-related medical items and services paid by Plaintiffs' Assignors pursuant to the MSP Act. It is conceivable, and perhaps even likely, that Defendants and the Other Gunster Clients will be pointing fingers at each other, with each seeking to establish that the other party is subject to some or all of the liability. This scenario leads to at least the possibility that information disclosed by Gunster in the course of the attorney-client relationship with Defendants could be used to support a position contrary to the Other Gunster Clients. That very possibility that should cause this Court to conclude that Gunster must be disqualified from further participation in this case.

### C. Disqualification of Gunster Is Appropriate Pursuant to Rule 4-1.8(g), Florida Bar Rules of Professional Conduct

Rule 4-1.8(g), Florida Bar Rules of Professional Conduct provides as follows:

Settlement of Claims for Multiple Clients. --A lawyer who represents 2 or more clients is **prohibited** from participating in making an aggregate settlement of the claims of or against the clients, or in a criminal case an aggregated agreement as to guilty or nolo contendere pleas, unless each client gives informed consent, in a writing signed by the client. The lawyer's disclosure must include the existence and

nature of all the claims or pleas involved and of the participation of each person in the settlement.

Gunster's joint representation of numerous primary payers wreaks havoc with the settlement process. Mediation and settlement have progressively become more important and studies show that upwards of 99 percent of cases will settle without a jury trial.[6] However, Gunster's joint representation of payers who are jointly and severally liable renders settlement impossible; not just because this creates a logistical nightmare, but because Gunster is enjoined from engineering a global settlement by Rule 4-1.8(g).

As in *Bedoya*, the impact on the settlement process is of particular importance. The adverse impact on the settlement process was one of the reasons that the *Bedoya* court held it was necessary to act: "The Court finds that although the specific statement at issue did not occur in proceedings before the undersigned, that statement has so affected the administration of the current action that a remedy is warranted. 'It is a given that federal courts enjoy a zone of implied power incident to their judicial duty.'" *NASCO, Inc. v. Calcasieu Television & Radio, Inc*., 894 F.2d 696, 702 (5th Cir. 1990) aff'd sub nom. *Chambers v. NASCO, Inc*., 501 U.S. 32, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991). The Court's inherent power is "an implied power squeezed from the need to make the court function. It is power necessary to the exercise of all others . . . and governed not by rule or statute but by the control *necessarily* vested in courts to manage their own affairs." *Bedoya* 861 F. Supp. 2d 1346, 1356 (S.D. Fla. 2012).

Plaintiffs do not suggest disqualification lightly. Plaintiffs are the real victims here. The harm joint representation causes has been brought to light by recent settlements in *MSPA Claims 1, LLC v. Ocean Harbor Cas. Ins.* Case No. 2015-1946-CA-01, where the Plaintiffs' have settled with a primary payer at less than statutory damages with a full reservation of rights to seek the additional damages against first or third-party insurers who are also primary payers. Gunster's concurrent representation of numerous primary payers makes this approach, which is the only sensible one, impractical if not impossible. Disqualification is necessary in order to preserve the integrity of the legal process.

The multiple, simultaneous representation of adverse parties is continuing. Unlike the typical disqualification where joint representation is a historical event, here, Gunster continues

---

[6] *See* Scott Silverman, *The Ever Decreasing Jury Trial Rate*, Daily Business Review June 4, 2018.

to represent adverse parties with ineluctable damage to Plaintiffs and to the efficient administration of justice. It is the continuous, on-going nature of this conflict that requires disqualification under Rule 4-1.16(a)(1) as well: "a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if … the representation will result in violation of the Rules of Professional Conduct or law." Here, the conflict of interest is manifest. The Florida Supreme Court in *the Florida Bar v. Moore*, 194 So.2d 264, 269 (Fla. 1966) described that conflict succinctly: "[A] lawyer represents conflicting interests…when it becomes his duty, on behalf of one client, **to contend for that which his duty to another client would require him to oppose**… [E]xcept in exceptional circumstances...an attorney may not represent conflicting interests in the same general transaction, no matter how well-meaning his motive or however slight such adverse interest may be. **The rule in this respect is rigid**[.]" (emphasis added). Counsel's continuous representation of the Defendants and the Other Gunster Clients will wreak havoc with the settlement and mediation process.

### D. Disqualification of Gunster Is Appropriate Due to An Appearance of Impropriety

There is clearly, at the very least, an appearance of impropriety - in the form of undermining the loyalty and trust upon which an attorney-client relationship is based - that requires Gunster's disqualification from representing Defendants in this litigation. *See Rentclub, Inc. v. Transamerica Rental Finance Corp.,* 811 F. Supp. 651, 654 (M.D. Fla. 1992) (finding that "even the appearance of impropriety may, under appropriate circumstances, require prompt remedial action from the court… [and] any doubt is to be resolved in favor of disqualification"); *see also Baybrook Homes, Inc. v. Banyan Construction & Development, Inc*., 991 F. Supp. 1440, 1444 (M.D. Fla. 1997); *see, e.g., McPartland v. ISI Inv. Services, Inc.*, 890 F. Supp. 1029 (M.D. Fla. 1995) (disqualifying a law firm under Florida law for their prior representation of plaintiff, current representation of Defendants, and substantial relationship to the present issues).

The Eleventh Circuit in *In re: Finkelstein* has held that the standard for motions to disqualify is based on the state's local rules governing professional conduct, including judicial decisions interpreting those rules. *See In re: Finkelstein*, 901 F.2d 1560, 1564-65 (11th Cir. 1990). While the current Florida Rules of Professional Conduct do not contain an express provision prohibiting the appearance of impropriety, Florida law clearly retains this requirement. *McPartland*, 890 F. Supp. at 1030. The Florida Supreme Court has upheld the appearance of impropriety standard, and because federal courts must base their standard for disqualification on

13

the rules of the state, as interpreted by that state's judicial decisions, it follows that the appearance of impropriety standard is still viable in Florida. *See id.*; *see also Bhd. Mut. Ins. Co. v. Nat'l Presto Indus., Inc.*, 846 F. Supp. 57 (M.D. Fla. 1994).

In the instant case, there is an unassailable appearance of impropriety. Since the inception of Gunster's representation of Defendants, almost every filing and responsive document by Defendants has been nearly identical to the filing and responsive document by Gunster in the same related matters involving the Other Akerman Clients. The fact that Defense Counsel has mimicked nearly every document that has been produced in the matters involving the Other Gunster Clients cannot be ignored and lends itself to the reasonable inference that confidential information has or will be passed from Gunster to Defendants and vice versa. As stated by the Supreme Court of Florida, "[o]ur legal system cannot function fairly or effectively if an attorney has an informational advantage in the form of confidences gained during a former representation of his client's current opponent." *State Farm Mut.,* 575 So. 2d at 632. Clearly, Gunster has an informational advantage because of the confidences gained during the representation of the Other Gunster Clients, which Defense Counsel can use to Defendants' detriment.

Additionally, Defense Counsel has engaged in a concerted scheme to defraud the Medicaid and Medicare programs by failing to provide Plaintiffs pertinent information that would facilitate the recovery process, resulting in millions of dollars of unwarranted payments by Medicaid and Medicare.[7] Defendants and the Other Gunster Clients have been substantial financial beneficiaries of Defense Counsel's stonewall tactics and has facilitated Defendants and the Other Gunster Clients' ongoing fraudulent practices by evading their statutory and contractual obligations to submit primary payer information to Plaintiffs and to pay or reimburse Plaintiffs. Indeed, the Honorable John M. Walker of the U.S. Court of Appeals for the Eleventh Circuit recognized this in the *MSP Recovery Claims, Series LLC v. Ace Am. Ins. Co*.,[8] oral argument and stated:

---

[7] 42 U.S.C. § 139u-6 created the Medicaid Integrity Program ("MIP"). The purpose of the MIP is to combat fraud, waste, and abuse. 42 U.S.C. § 1396u-6(d)(1). Through MIP, the secretary of CMS is charged with training state officials on policies and procedures for ensuring the integrity for the Medicaid program. 42 U.S.C. § 1396u-6(b). To hold states accountable for actively recovering overpayments, CMS requires the individual states to refund the federal portion of any overpayments made. 42 C.F.R. § 433.316(a).

[8] In *Ace*, the Eleventh Circuit of Appeal agreed with Plaintiffs on all issues but still Gunster continues to delay the production of mandated information.

> The primaries are not paying primary. They're waiting and they – and they – and the secondaries pay – make the payment and then the primaries are not stepping up after those payments are made to reimburse. They are waiting and there's – it's obviously, from an economics perspective, to their advantage to do that, put it off as long as possible and have the lawsuit their come in and as limited way as possible, and that's why what your client is doing is problematic from their perspective because their aggregates these claims and goes after the – after the primary reimbursements on mass, if you will…
>
> So without the primaries paying, just so I'm – I'm trying to understand this from a economics perspective, without the primaries paying, the cost then are shifted to the tax payers and through – through the Medicare system, MAO system and so forth. If the primaries come in and pay, then the taxpayers are relieved of this risk to the extent of the primary's obligations.

Honorable John M. Walker, Jr. of the U.S. Court of Appeals in *MSP Recovery Claims Series LLC v. Ace,* Case No: 18-12139, 18-12139 2020 WL 5365978, transcript at pp.10-1:14-21 (11th Cir., September 10, 2020).

The Eleventh Circuit Court of Appeals has recognized that primary payers are "putting off as long as possible" their primary payer obligations for their financial gains. Defense Counsel has been complicit in this fraudulent business practice since Defense Counsel has utterly disregarded the red flags indicating fraud, waste, and abuse by Defendants and the Other Gunster Clients. Gunster has assisted Defendants and the Other Gunster Clients in conduct known to be fraudulent by consistently failing to provide Plaintiffs essential information that it is legally entitled to. *See Feige*, 596 So. 2d at 433 (finding attorney to have violated disciplinary rules by assisting client in conduct known to fraudulent by failing to reveal the fraud to the affected person). Rather than end the relationship with Defendants and the Other Gunster Clients, Defense Counsel has chosen to look the other way and allowed Defendants and the Other Gunster Clients to continue their fraudulent practices. Tellingly, insurance carriers that are not being represented by Gunster have agreed to data matching and have produced vital information to Plaintiffs to settle claims. For the reasons discussed above, Gunster has clearly failed to avoid even the appearance of professional impropriety and should be disqualified.

### E. Disqualification of Gunster Is Appropriate Pursuant to Rule 4-1.10, Florida Bar Rules of Professional Conduct

Lawyers are permitted to, and most often do, disclose to other lawyers in their firm information relating to a client of the firm, whether it be for advice, delegation of work, or

otherwise. R. Regulating Fla. Bar 4-1.6 cmt. (2010). To protect clients from hazards inherent in said authorized exchange of information, the Florida Bar created Rule 4-1.10. Pursuant to Rule 4-1.6(a), Florida Bar Rules of Professional Conduct, while lawyers are associated in a firm, none of them are permitted to knowingly represent a client when any one of them practicing alone would be prohibited from doing so under Rule 4-1.7 or 4.1-9. "The rule of imputed disqualification stated in subdivision (a) gives effect to the principle of loyalty to the client as it applies to lawyers who practice in a law firm. Such situations can be considered from the premise that a firm of lawyers is essentially one (1) lawyer for purposes of the rules governing loyalty to the client or from the premise that each lawyer is vicariously bound by the obligation of loyalty owned by each lawyer with whom the lawyer is associated." R. Regulating Fla. Bar 4-1.10 cmt. (2010). As Gunster is prohibited from representing Defendants by either Rule 4-1.7 or 4-1.9 or both, all attorneys of Gunster Law Firm should be disqualified under Rule 4-1.10(a), Florida Bar Rules of Professional Conduct.

## CONCLUSION

Gunster should be disqualified from representing Defendants in this litigation as a result of its current and prior representation of the Other Gunster Clients. This simultaneous representation of multiple defendants who are taking adverse positions to each other makes a mockery of the legal process and necessarily brings the settlement process to a screeching halt. Gunster received confidential information from Defendants the Other Gunster Clients and provided legal advice related to the exact matters at issue in this litigation. Plaintiffs' motion to disqualify Gunster should be granted.

## REQUEST FOR HEARING

Pursuant to Local Rule 7.1(b)(2), Plaintiffs hereby requests oral argument on this Motion. Removal of counsel requires an adequate evidentiary hearing. *Holland v. Tenebaum*, 360 So. 2d 493, 493 (Fla. 4th DCA 1978). "Disqualification cases require the court to make a factual determination that 1) there is proof that confidential information was actually disclosed and, 2) that this information gave the non- moving party an unfair tactical advantage." *Gutierrez v. Rubio, 126 So. 3d 320* (Fla. 3d DCA 2013) (quashing and remanding disqualification order granted without an evidentiary hearing) (emphasis added); *see also C.f. City of Apopka v. All Corners, Inc.*, 701 So.2d 641, 644 (Fla. 5th DCA 1997) (holding that disqualification is required only when there is evidence that a law firm obtained confidential information). A moving party must present

competent evidence proving the grounds for disqualification. *Health Care & Ret. Corp. of Am., 961 So. 2d at 1072* (remanding for an evidentiary hearing for additional evidence regarding "substantial relationship" between issues in current and former representations). *See Akrey v. Kindred Nursing Centers E., LLC*, 837 So. 2d 1142, 1145 (Fla. 2d DCA 2003) (quashing order disqualifying counsel that was based only upon affidavits filed by counsel, finding the order departed from the essential requirements of law). Plaintiffs believe it will be helpful for the Court to hear oral arguments from and address outstanding questions to both parties. Plaintiffs estimates twenty (20) minutes per side for oral argument.

## LOCAL RULE 7.1(a)(3) CERTIFICATE OF GOOD-FAITH CONFERENCE

Plaintiffs' counsel conferred with Gunster in good faith effort to resolve the issues raised in this motion but have been unable to do so.

Dated: March 16, 2021                                    Respectfully submitted,

                                                         **MSP RECOVERY LAW FIRM**
                                                         2701 S. Le Jeune Rd, 10th Floor
                                                         Coral Gables, Fl 33134
                                                         Tel: (305) 614-2222
                                                         Fax: (866) 582-0907

                                                         By: /s/ *John H. Ruiz*
                                                         John H. Ruiz
                                                         Fla. Bar No. 928150
                                                         serve@msprecoverylawfirm.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served electronically using the CM/ECF filing system on March 16, 2021, on all counsel or parties of record.

                                                         /s/ *John H. Ruiz*
                                                         John H. Ruiz